1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN GNC CORP., | Case No. 17-cv-01090-BAS-BLM |
| Plaintiff, | **ORDER:** |
| v. | **(1) GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER [ECF No. 40];** |
| LG ELECTRONICS, INC., *et al.*, | |
| Defendants. | **(2) GRANTING MOTION TO FILE SURREPLY [ECF No. 50];** |
| | **AND** |
| | **(3) GRANTING IN PART AND DENYING IN PART *EX PARTE* MOTION [ECF No. 73]** |

Pending before the Court are three motions: (1) a motion for leave to file an amended answer by LG Electronics, Inc., LG Electronics MobileComm U.S.A., Inc., and LG Electronics Mobile Research U.S.A., LLC (collectively "Defendants" or "LGE") (ECF No. 40); (2) a motion by Plaintiff American GNC ("AGNC") for leave to file a surreply in connection with Defendants' motion to file an amended answer (ECF No. 50); and (3) an *ex parte* motion filed by Defendants concerning issues

related to the claim construction hearing in this case (ECF No. 73). AGNC has opposed both the motion for leave to file an amended answer (ECF No. 46) and the *ex parte* motion (ECF No. 76). For the reasons herein, the Court grants in part and denies in part Defendants' motion for leave to file an amended answer, grants Plaintiff's motion for leave to file a surreply, and grants in part and denies in part Defendants' *ex parte* motion.

## I.    BACKGROUND

### A.    Background Relevant to Proposed Amended Answer

AGNC filed this case on May 26, 2017, alleging that LGE has infringed sixteen claims across seven patents. (*See generally* ECF No. 1, Complaint.) A First Amended Complaint ("FAC") was subsequently filed on June 14, 2017. (ECF No. 6.) The Patents-In-Suit, which Plaintiff owns, are: 6,311,555 ('555 patent), 6,415,227 ('227 patent), 6,508,122 ('122 patent), 6,516,283 ('283 patent), 6,671,648 ('648 patent), 6,697,758 ('758 patent), and 6,792,353 ('353 patent). (*Id.* ¶28.) Plaintiff alleges that it "specializes in inventing and applying advanced and innovative technologies to contemporary problems within the fields of Guidance, Navigation, Control and Communications (GNCC), Inertial Sensors, Health Monitoring, Intelligent Processing, and Autonomous Robotics." (*Id.* ¶19.) Plaintiff also alleges that Defendants have infringed the Patents-in-Suit by "making, using, offering for sale, selling and/or importing" an assortment of "accused smartphones, tablets, and other mobile wireless devices." (*Id.* ¶¶38–39.)

LGE filed its Answer to the FAC on June 30, 2017, asserting seven affirmatives defenses to AGNC's suit. (ECF No. 12.) On September 7, 2017, this Court granted a joint motion by the parties to extend the deadline to file amended pleadings and set September 22, 2017 as the appropriate deadline. (ECF Nos. 34, 35.) The Court subsequently denied in part a motion by Plaintiff to strike LGE's second and third defenses respectively related to non-infringement and invalidity and granted in part the motion as to Defendants' seventh defense that AGNC's

– 2 –

claims are barred by 35 U.S.C. §288. (ECF No. 52.) Thereafter, Defendants timely filed the instant motion for leave to file a first amended answer on September 22, 2017. (ECF No. 40.) Defendants' Proposed First Amended Answer ("PFAA") seeks to add an eighth defense of inequitable conduct and a ninth defense of unclean hands by AGNC in its prosecution of the '353 patent before the United States Patent Trade Office ("PTO"). (ECF Nos. 40-1, Ex. A; 40-2, Ex. B ("PFAA").)

### B. Background Relevant to *Ex Parte* Motion

Pursuant to the Case Management Order (ECF No. 33), the parties were required to submit a Joint Claim Construction Chart, Worksheet, and Hearing Statement (the "Joint Statement") by December 18, 2017 in accordance with Patent Local Rule 4.2(a). The Rule requires that parties in a patent litigation submit a joint statement which identifies "terms whose construction will be most significant to the resolution of the case up to a maximum of ten (10) terms." S.D. CAL. PATENT L.R. 4.2(a). If the parties cannot agree on the ten most significant terms, the parties must identify the ones which they do agree are most significant and may evenly divide the remainder of the permitted terms subject to the overall ten term limitation. *Id.* Prior to filing the Joint Statement (ECF No. 72), the parties met and conferred on multiple occasions regarding the most significant terms to be construed at the claim construction hearing by this Court. (ECF No. 73 at 2.) LGE indicates that it raised the possibility of the parties submitting a joint request to the Court to increase the ten term limit due to the breadth of the claims and issues involved in this case and to separately address indefinite terms. (*Id.*; ECF No. 73-1 ¶¶1–3.) The parties indicate that they sought the Court's intervention through a voicemail request. (ECF Nos. 73 at 2; 76 at 7.) LGE proposed submitting a joint request on the issue to Court once more, but, according to LGE, Plaintiff refused that request. (ECF Nos. 73 at 2; 73-1 ¶5.) LGE thereafter notified AGNC of its intent to file the instant *ex parte* motion. (ECF Nos. 73 at 2; 73-1 ¶6.)

On December 18, 2017, the parties timely filed their Joint Statement. (ECF

No. 72.)  In the Joint Statement, AGNC and LGE divided between them the ten terms permitted under the Patent Local Rules, with each side identifying five terms it deemed to be "most significant" to resolution of this case.  (*Id*.)  In addition to the total ten terms identified by the parties, LGE identified additional terms it believes the Court should construe at the claim construction hearing above the ten term limit, which are also the subject of the *ex parte* motion.  (*Id*.; *see generally* ECF No. 73.)

## II.    THE MOTION FOR LEAVE TO FILE AN AMENDED ANSWER[1]

Defendants' proposed eighth and ninth defenses concern two sets of conduct by AGNC in its prosecution of the application for the '353 patent by Ching-Fang Lin, the inventor of the patent, and/or Raymond Chan, the prosecutor of the patent (collectively, "Applicant").  (PFAA ¶¶617, 622–23.)  First, the Applicant allegedly failed to disclose the Ebner/McDonough references combination and the PTO Examiner's prior rejection of identical claims in a parent patent application based on that combination.  (*Id*. ¶¶630–646.)  Second, the Applicant allegedly failed to disclose the Millington/Tabbara references, which were cited during the prosecution of the '227 application.  (*Id*. ¶¶647–658.)  Both parties dispute whether Defendants' proposed amendments concerning this conduct would be futile.  The Court determines that whereas LGE's allegations concerning the Ebner/McDonough combination and prior rejection are sufficient to plead a defense of inequitable conduct and therefore not futile, the allegations concerning the second are not sufficient and would be futile.[2]

---

[1] In resolving Defendants' motion for leave to file a first amended answer, the Court, in its "sound discretion," grants Plaintiff's request to file a surreply (ECF No. 50).  *See Brady v. Grendene USA, Inc*., No. 3:12-cv-0604-GPC-KSC, 2015 WL 6828400, at *3 (S.D. Cal. Nov. 6, 2015).  The Court, however, advises both parties that in the future, proposed surreplies are strongly discouraged absent exigent circumstances and should only include arguments not already raised.

[2] Because LGE's proposed ninth defense is expressly premised on the same allegations underlying the inequitable conduct defense (*see* PFAA ¶660), the Court

– 4 –

## A.    Legal Standard

Generally, a motion for leave to amend is governed by Federal Rule of Civil Procedure Rule 15(a), which establishes a policy favoring amendments to pleadings with "extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000). Indeed "a court must be guided by the underlying purpose of . . . Rule 15 to facilitate decision on the merits." *Id.* Against this backdrop, a district court determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Amendment is futile if the amended pleading fails to state a claim on which relief may be granted. *See Vaughan v. California*, No. 10-cv-1179, 2013 WL 4517294, at *1 (S.D. Cal. Aug. 23, 2013). Where, as here, a party seeks to plead a defense of inequitable conduct by an individual who prosecuted a patent, the pleading must satisfy the requirements of Federal Rule of Civil Procedure 9(b), as interpreted by the Federal Circuit. *See Exergen Corp. v. Wal-Mart*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) ("[W]e apply our own law, not the law of the regional circuit, to the question of whether inequitable conduct has been pleaded with particularity under Rule 9(b).").

Rule 9(b) generally requires that "a party must state with particularity the circumstances constituting fraud or mistake" but "intent . . . and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead inequitable conduct in a patent case, "Rule 9(b) requires identification of the specific

---

limits its analysis to LGE's proposed eighth defense. Moreover, at a minimum, establishing unclean hands requires proof of inequitable conduct. *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810 (Fed Cir. 1990). Where an unclean hands defense is premised on alleged acts of inequitable conduct, "it rises and falls based on those allegations." *Chamberlain Group, Inc. v. Techtronic Indus. Co.*, No. 16 C 6097, 2017 WL 1101092, at *16 (N.D. Ill. Mar. 22, 2017). Therefore, the Court's disposition of the proposed eighth defense applies equally to the proposed ninth defense.

– 5 –

who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. A pleading that simply avers the substantive elements of inequitable conduct without setting forth the particularized factual bases for the claim does not satisfy Rule 9(b). *See id.* at 1326–27. Rather, the facts alleged must give rise to a reasonable inference that "a specific individual (1) knew of the withheld information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328–29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5. A motion for leave to amend a pleading to add an inequitable conduct defense may be denied where the proposed amendments fail to satisfy these standards. *See id*. at 1331 (court did not abuse discretion in denying motion for leave to amend answer where allegations of inequitable conduct were deficient); *see generally Chamberlain Group, Inc. v. Techtronic Indus. Co.*, No. 16 C 6097, 2017 WL 1101092 (N.D. Ill. Mar. 22, 2017) (denying in part motion for leave to file an amended answer as to inequitable conduct allegations futile under *Exergen*).

A defendant confronting a patent infringement suit has several equitable defenses that it can use to invalidate a patent, including a claim of inequitable conduct, formerly known as "fraud on the patent office." *See Front Row Techs., LLC v. NBA Media Ventures, LLC*, 163 F. Supp. 3d 938, 978 (D.N.M. 2016). Inequitable conduct is now rooted in an individual's duties of candor and good faith with respect to the USPTO. *See* 37 C.F.R. §1.56. Intentional breach of these duties can render an entire patent unenforceable. *See Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1567 (Fed. Cir. 1989). For this reason, the Federal Circuit has described the remedy for inequitable conduct as "the 'atomic bomb' of patent law." *Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276, 1288 (Fed. Cir. 2011).

## B. Sufficiency of the Proposed Amendments

### 1. The Allegations Concerning the Ebner/McDonough Combination and Prior Rejection of Identical Claims Are Not Futile

The Court first turns to the Applicant's alleged failure in its prosecution of the application for the '353 patent to disclose the Ebner/McDonough combination and the PTO's prior rejection of identical claims based on that combination. In opposition, AGNC asserts that it had no duty to disclose the Ebner/McDonough references to the PTO and, therefore, LGE's defense as to this conduct must fail as a matter of law. (ECF No. 46 at 34). AGNC further argues that LGE fails to allege the requisite intent to deceive the PTO. The Court does not agree with either argument.

### a. The Alleged Circumstances of AGNC's Conduct

In the Proposed First Amended Answer, LGE alleges that in its prosecution of U.S. Patent 6,622,090 ('090 patent), the predecessor parent patent of the '353 patent, the Applicant disclosed two references: the Ebner reference (U.S. Patent No. 5,657,025) and the McDonough reference (U.S. Patent No. 6,330,858). (PFAA ¶¶617, 631.) The application for the '090 patent was filed by Lin on September 26, 2001, the founder of AGNC and the sole named inventor of the '090, '353 patent, and '277 patents. (*Id.* ¶¶617, 622, 630.) Raymond Y. Chan was the patent prosecutor for all three patents. (*Id.* ¶623.) LGE alleges that the Examiner for the '090 patent, Jacques H. Louis-Jacques, rejected claims 1–3, 34, 35 and 41–45 in the original application for the '090 patent because they were unpatentable over the Ebner reference in view of the McDonough reference. (*Id.* ¶631 (citing App. No. 09/968,410, Nov. 7, 2002 Office Action at 2).) LGE alleges that in a February 7, 2003 amendment during prosecution of the '090 application, the Applicant canceled the rejected claims from the '090 application, but on the same day filed the divisional application leading to the '353 patent. (*Id.* ¶¶618, 633–34.) The divisional

application allegedly copied verbatim the rejected claims canceled from the '090 application, which eventually issued as Claims 1–10 of the '353 patent. (*Id.* ¶¶634–35.) LGE alleges that the Applicant did not cite Ebner or McDonough in an information disclosure statement during prosecution of the '353 application, nor did the Applicant alert the Examiner of the '353 application to the prior rejection of the claims in the '090 application. (*Id.* ¶¶637–38.) The Examiner of the '353 application was the same as the '090 application. (*Compare id*. ¶624 *with id.* ¶626.) LGE further alleges that the Examiner did not confirm in an office action during the prosecution of the '353 application whether he had considered the combination. (*Id*. ¶639.)

The Court finds that LGE's allegations sufficiently identify with particularity the "who" and "when" of alleged inequitable conduct. *Exergen*, 575 F.3d at 1326; *see also Front Row Techs., LLC*, 163 F. Supp. 3d at 981 ("Most pleadings successfully allege 'who' was responsible for misleading the USPTO and 'when' the alleged acts occurred."). The allegations also identify the "where" and "what" of the inequitable conduct by identifying "specific claims within specific patents." *Id.* at 982. Specifically, LGE identifies the rejected claims of the'090 application and where they appear in the '353 patent. (PFAA ¶¶631, 634–35.) The Court also finds that LGE has sufficiently alleged "how" the Ebner/McDonough combination and prior rejection of identical claims are material. LGE identifies the specific portion of the Examiner's office action rejecting the relevant claims from the '090 application on the basis of the Ebner/McDonough combination and the specific claims in the '353 patent. (*Id*. ¶632.) LGE alleges that the Examiner could have entered a rejection during prosecution of the application for the '353 patent based on the Ebner/McDonough combination because of the Examiner's prior rejection of the identical claims and, in fact, did not reject the claims in the '353 application because of AGNC's failure to disclose that combination and the prior rejection. (*Id*. ¶¶643–44, 646.) These allegations are adequate at this stage. *See Front Row Techs., LLC*,

– 8 –

163 F. Supp. 3d at 986 (parties alleging inequitable conduct must cite the specific claims in specific patents that would be deemed unpatentable in light of undisclosed information); *Milwaukee Elec. Tool Corp. v. Hitchi Koki Co*., *Ltd*., No. 09-C-948, 2012 WL 1952977, at *8 (E.D. Wis. May 29, 2012) (same).

AGNC argues that LGE's allegations "fail as a matter of law" because AGNC had no duty to disclose the Ebner/McDonough references to the Examiner. (ECF No. 46 at 3.) This challenge is twofold. First, AGNC argues that the Ebner reference was already before the Examiner and therefore it cannot be deemed to have been withheld from the Examiner. (*Id*.) The Court does not find this argument persuasive. LGE's allegations implicitly acknowledge that the Ebner reference appeared on the face of the '353 patent by identifying that the McDonough reference is not listed. (PFAA ¶640.) LGE's allegations of inequitable conduct, however, pertain to the Applicant's alleged failure to disclose the Ebner/McDonough *combination*. (*Id*. ¶641.) AGNC's argument that the Ebner reference was before the Examiner fails to address the precise scope of LGE's allegations, which show that the Examiner's prior rejection turned on the Ebner reference *in view of* the McDonough reference. (*Id*. ¶632.)

Second, AGNC argues that because the Ebner/McDonough references were cited during the prosecution of the '090 patent, it had no duty to disclose them again and, thus, there can be no inequitable conduct on this basis. (ECF No. 46 at 4.) To argue it had no duty to disclose the combination in the '353 divisional application, AGNC relies on Section 609.02 of the Manual of Patent Examining Procedure ("MPEP"), which states in relevant part that "the examiner will consider information which has been considered by the Office in a parent application" in a divisional application and that "a listing of the information need not be resubmitted" in the divisional application. (MPEP §609.02.) The Court acknowledges that multiple courts have determined that there can be no inequitable conduct where an applicant, in a divisional application, does not resubmit references that were cited in a parent

– 9 –

application.  *See, e.g., Chamberlain Group, Inc. v. Lear Corp.*, 756 F. Supp. 2d 938, 971 (N.D. Ill. 2010) (referring to MPEP Section 609.02); *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998), *aff'd in part, rev'd in part*, 53 F.3d 1270 (Fed. Cir. 1995)); *see also eBay, Inc. v. IDT Corp.*, No. 08-CV-4015, 2009 WL 2706395, at *3 (W.D. Ark. Aug. 24, 2009).

However, AGNC's argument fails to address the materiality of the prior rejection of identical claims.  As the PFAA alleges and as LGE makes clear in response, the alleged inequitable conduct pertains to the Applicant's failure to disclose the Ebner/McDonough combination *and* the previous rejection of identical claims in the parent patent application based on that combination.  (PFAA ¶¶643–44; ECF No. 49 at 6–7.)  That Section 609.02 required the Examiner to consider prior references of the parent '090 patent when reviewing the divisional application leading to the '353 application does not necessarily mean that the Examiner maintained awareness of the prior rejection of identical claims in the '090 application, which were subsequently cancelled and copied into the divisional application leading to the '353 patent.  The Federal Circuit has instructed that "[a] prior rejection of a substantially similar claim refutes, or is inconsistent with the position that those claims are patentable" and goes to materiality.  *See Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003).  Although *Dayco* concerned an adverse determination by a *different* examiner rather than the *same* examiner, the same examiner may not necessarily maintain awareness of a prior rejection—and its materiality—even when the same references are before him. *See, e.g., Mediostream, Inc. v. Microsoft Corp.*, No. 2:08-cv-369-CE, 2010 WL 4239196, at *6 (E.D. Tex. Oct. 27, 2010) ("Under the MPEP, the examiner in this case may have had the Washino reference before him; however, he may not have maintained awareness of the materiality of this reference in light of his prior rejection."); *cf. Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F. Supp. 2d 508, 529 (D.N.J. 1999) ("[T]he [MPEP] warns applicants not to 'assume

– 10 –

that an examiner will necessarily remember, when examining a particular application, other applications which the examiner is examining or has examined,'" (quoting testimony of former PTO Director Harry Manbeck)). The Applicant's alleged failure to disclose to the Examiner the prior rejection of identical claims based on the Ebner/McDonough combination may still constitute a breach of the duty of good faith and candor an applicant has to the PTO and, therefore, may support a claim of inequitable conduct. *See Therasense*, 649 F.3d at 1288 (breach of duty may lead to a finding of inequitable conduct); *Bradley v. Applied Marine Sys. LLC*, No. 13-cv-03941, 2014 WL 1648726, at *3 (N.D. Cal. Apr. 23, 2014) (same).

AGNC's argument it had no duty to disclose is unpersuasive for another reason. LGE's allegations of inequitable conduct are not predicated solely on a failure to disclose the combination during the filing of the divisional application, but encompass the Applicant's alleged failure to alert the PTO of the combination and prior rejection during the prosecution of the '353 patent. (PFAA ¶¶636–39.) LGE in part alleges that the Applicant breached this duty when the Examiner failed to indicate that he considered the combination in the office action regarding the '353 application. (*Id.*) Although Section 609.09 concerns information that an applicant initially files with its application, the duty of candor and good faith each individual has in dealing with the PTO extends to "the filing *and prosecution* of a patent application." *See* 37 C.F.R. §1.56(a) (emphasis added). Even assuming that the Applicant had no duty to disclose the combination during the initial filing of the application leading to the '353 patent, the allegations reach conduct during the prosecution of the application. Accordingly, the Court concludes that LGE has sufficiently alleged materiality with respect to the Ebner/McDonough combination and prior rejection of identical claims. LGE's amendments are not futile on this ground.

### b. AGNC's Alleged Knowledge and Intent

LGE next argues that its allegations suffice to establish a reasonable inference of the Applicant's specific intent to mislead the PTO. (ECF No. 49 at 5.) The Court agrees that the allegations give rise to such an inference.

As an initial matter, the Court finds that LGE has sufficiently alleged knowledge of the withheld material information, as required by *Exergen*, 575 F.3d at 1327. LGE alleges that the '090 and '353 applications were made by the same inventor and prosecuted by the same attorney. (PFAA ¶¶617, 622–23.) It stands to reason that such individuals would be aware of a previous patent application they filed or prosecuted. *See, e.g., See ESCO Corp. v. Cashman Equip. Co*., 158 F. Supp. 3d 1051, 1066 (D. Nev. 2016) (same prosecuting attorney would be aware of a patent he prosecuted before); *Nomadix, Inc. v. Hospitality Core Servs*., *LLC*, No. CV 14-08256 DDP (VBKx), 2015 WL 3948804, at *5 (C.D. Cal. June 29, 2015) (finding plausible that the lawyer charged with engaging in patent prosecution for the company would be aware of the contents of the company's other patent applications).

Beyond the knowledge alleged in the proposed amendments, LGE alleges that the Applicant "chose" not to disclose to the PTO the allegedly material information. (PFAA ¶645.) LGE further identifies the circumstances concerning the Applicant's conduct in prosecuting the '353 application from which the Court can reasonably infer that the Applicant possessed the specific intent to deceive the PTO. First, LGE alleges that the Applicant cancelled the rejected claims from the '090 application and then copied those claims verbatim into a new divisional application. (*Id.* ¶¶631–34.) Second, LGE alleges that '353 application did not contain the McDonough reference, thereby failing to disclose the Ebner/McDonough combination. (*Id.* ¶637.) Third, LGE alleges that the Applicant did not bring either the combination or the rejection of the prior claims to the attention of the Examiner. (*Id.* ¶¶636, 638.) Fourth, LGE alleges that the Applicant failed to bring to the attention of the

– 12 –

Examiner the combination and rejection despite the absence of any confirmation from the Examiner that he had reviewed the combination. (*Id.* ¶¶639, 645.) Taking these allegations together, the Court can reasonably infer that there was a "deliberate decision," *Exergen*, 575 F.3d at 1330, by the Applicant to withhold material information from the PTO when it prosecuted the '353 application.

In surreply, AGNC argues that LGE's allegations of intent to deceive are insufficient in light of the Federal Circuit's decision in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011). AGNC argues that the decision "adopted a more stringent standard for inequitable conduct" and specifically that LGE "is now required to show that AGNC's counsel did in fact know of an examiner mistake and intended to deceive the USPTO." (ECF No. 50-1 at 3.) Although it is true that *Therasense* "tightens the standard for finding both intent and materiality," 649 F.3d at 1290, to ultimately prevail on an inequitable conduct claim, the decision cannot be read to disturb the pleading standard for inequitable conduct set forth in *Exergen*. *See generally Cyber Acoustics, LLC v. Belkin Int'l, Inc.*, 988 F. Supp. 2d 1236 (D. Or. Dec. 27, 2013) (quoting the *Exergen* standard); *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955, 2012 WL 600715, at *7–8 (D. Del. Feb. 3, 2012) (determining that *Therasense* did not affect the *Exergen* pleading standard), *adopted by* 2012 WL 749378 (D. Del. Mar. 1, 2012);. *Therasense* adopted a "clear and convincing" evidentiary standard that a party must ultimately meet to prevail on an inequitable conduct defense or claim, 649 F.3d at 1290–91, an evidentiary stricture which is inapplicable at the pleading stage. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 13 F. Supp. 3d 1116 (D. Or. 2014) ("*Therasense* . . . set[s] forth the standard of proof at trial, not the standard for weighing the sufficiency of the factual allegations in the pleading."); *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 900 (N.D. Cal. 2011) ("It would be inappropriate at the motion to dismiss stage to hold that [defendant] cannot plead inequitable conduct based on a case that addressed the heightened standards . . . for

– 13 –

proving the elements of such a claim."). The Court, therefore, rejects Plaintiff's *Therasense*-based argument at this juncture.[3]

On the basis of the foregoing, the Court concludes that LGE's proposed eighth and ninth defenses as to the Ebner/McDonough combination and prior rejection of identical claims would not be futile. Whether LGE can ultimately prevail on its inequitable conduct defense on the evidence is a matter for a later stage of the proceedings, not during this Court's current review of the futility of the proposed allegations. Accordingly, the Court grants LGE's motion for leave to amend insofar as the proposed defenses concern this conduct.

### 2. The Allegations Concerning the Millington/Tabbara References are Futile

The Court next turns to the Applicant's alleged failure to disclose the Millington/Tabbara references from the application for the '227 patent in its prosecution of the application leading to the '353 patent. The Court determines that the allegations pertaining to this conduct fail to show how disclosure of the references would have been material to the '353 application and fail to show a specific intent to deceive the PTO.

LGE alleges that the '227 patent issued from an application co-pending with the '353 application. (PFAA ¶619.) The Applicant allegedly filed the '227 application on April 7, 2000. (*Id.* ¶650.) The Examiners of the '227 and '353 applications were different. (*Compare* ¶625 *with* ¶626.) LGE alleges that in an office action taken on March 14, 2001, the Examiner of the '227 application rejected Claims 1–3 and 16 of that application on the ground that they were unpatentable

---

[3] The Federal Circuit's post-*Therasense* decision in *Delano Farms Co. v. California Table Grape Commission*, 655 F.3d 1337 (Fed. Cir. 2011), confirms that this conclusion is correct. *See id.* at 1350 (identifying reasonable inference standard of *Exergen* as applicable to inequitable conduct charge at motion to dismiss stage); *see also Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc*., No. 10-cv-379-LED-JDL, 2011 U.S. Dist. LEXIS 160206, at *19–20 (E.D. Tex. Dec. 13, 2011) (same).

– 14 –

over the Millington reference (U.S. Patent No. 6,175,801) in view of the Tabbara reference (U.S. Patent No. 6,148,296). (*Id.* ¶651 (citing App. No. 09/546,349, Mar. 14, 2001 Office Action at 2).) LGE alleges that the Applicant did not disclose any of the references cited during the prosecution of the '227 application in the '353 application. (*Id.* ¶653.) LGE alleges that this constitutes inequitable conduct.

The Court finds these allegations fail to establish materiality. First, LGE's allegations fail to show how and why the Millington/Tabbara references were material to the '353 application. LGE generally alleges "on information and belief" that *any* "references material" to '227 application would also be material to the '353 application. (*Id.* ¶656.) Although LGE points to the Millington/Tabbara references that resulted in rejection of Claims 1–3 and 16 of the initial '227 application, LGE fails to connect those rejected claims to any claims that ultimately issued in the '353 patent. Specifically, LGE does not allege how or why the rejection of the claims from the '227 application would have made any particular claims in the '353 application unpatentable. Nor does it appear that LGE can plausibly allege such unpatentability. LGE's allegations concede that Claims 1, 2, 3 and 6 of the '353 patent that ultimately issued "differ" from Claims 1, 2, 3, and 36 of the '227 patent that ultimately issued. (*Id.* ¶655.) In opposition, AGNC discusses in greater detail the difference between the two patents, explaining that the '353 patent claims here include an additional claim element—that of inertial measurement unit—beyond the claims of the '227 patent. (ECF No. 46 at 9–10.) While LGE attempts to minimize the significance of this difference by alleging that it is the "only" difference (PFAA ¶655), the Court fails to see how, without further factual allegations, the Millington/Tabbara references from the '227 application would have been material to the '353 application such that the patentability of claims in the latter would reasonably have been implicated. *See Advanced Micro Devices (AMD) v. Samsung Elecs. Co.*, No. C 08-00986 SI, 2010 WL 963920, at *11 (N.D. Cal. Mar. 16, 2010) (inequitable conduct claims failed in part because they did not allege "how the

– 15 –

examiner would have used the information to assess patentability of the claims."). LGE cannot meet the strictures of Rule 9(b)'s particularity requirement by relying on the illusion of specificity.

Second, LGE's allegations regarding the materiality of the '227 application references otherwise aver materiality without a plausible explanation. "[S]imply stating that a reference is material is insufficient even at the pleading stage." *ESCO Corp.*, 158 F. Supp. 3d at 1064 (citing *Exergen*, 575 F.3d at 1329). In opposition, AGNC identifies that the '227 patent is a reference expressly cited in the '353 patent specification. (ECF No. 46 at 8.) The Federal Circuit has instructed that prior disclosures are "not material if [they are] cumulative of other information already disclosed to the PTO." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007). LGE's allegations fail to show why references from the '227 application would be material to a later application that expressly cited the '227 patent that ultimately issued. Therefore, LGE's allegations of inequitable conduct fail to show materiality and are futile.

Finally, the allegations concerning the Millington/Tabbara references fail to show specific intent to deceive the PTO. As the Federal Circuit has instructed:

> [t]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent to support an allegation of inequitable conduct.

*Exergen*, 575 F.3d at 1331. LGE's allegations are that the Applicant failed to disclose the Millington/Tabbara references during the '353 prosecution despite having disclosed these references during the '227 prosecution. This Court fails to see how LGE's allegations are distinguishable from those found to be insufficient in *Exergen*. Moreover, to the extent that specific intent here turns on the allegation that the '227 application references should have been disclosed in a co-pending

– 16 –

application (PFAA ¶619), the disclosure of a co-pending application generally defeats an inference of the specific intent to deceive the PTO.  *See Akron Polymer Container Corp. v. Exxel Container, Inc*., 148 F.3d 1380, 1384 (Fed. Cir. 1998) (finding that a litigant "could hardly be seeking to deceive the PTO as to the existence of copending applications when it actually disclosed the fact of copendency to the [Examiner]."). As discussed, AGNC identifies that the '227 patent was disclosed to the Examiner in the '353 patent. (ECF No. 46 at 8.) Therefore, this Court finds that LGE's allegations fail to give rise to a reasonable inference of a specific intent to deceive the PTO for this additional reason.

Accordingly, the Court finds that amendment would be futile on two independent grounds insofar as the eighth and ninth defenses concern AGNC's alleged failure to disclose the Millington/Tabbara references during the prosecution of the '353 application. Thus, the Court denies as futile Defendants' motion for leave to file a first amended answer alleging inequitable conduct on this ground.

**III.**    ***Ex Parte* Motion Related to Claim Construction Hearing**

Next, the Court considers Defendants' *ex parte* motion related to the claim construction hearing in this case. (ECF No. 73.) The motion requests: (1) an increase in the number of terms considered most significant for claim construction purposes above the term limit set by Patent Local Rule 4.2(a), (2) an increase in the length of the claim construction hearing opening and reply briefs above the limits set by Patent Local Rule 4.4(c), and (3) an order that indefiniteness challenges to certain terms will be addressed separately in dispositive motion practice, rather than as part of the claim construction hearing. (*Id.* at 1.) The Court grants in part and denies in part these requests.

**A.**    **Request to Increase Terms to be Construed at Claim Construction Hearing**

The Court first considers LGE's request to increase the number of terms to be construed at the claim construction hearing and related request to increase the

– 17 –

permissible length of the claim construction briefs.  LGE's request is twofold: (1) LGE seeks an increase of two additional terms to be construed at the claim construction hearing and (2) LGE requests that this Court also construe three "similar" most significant claim terms in "similar" technology without those terms being counted separately against the ten term limit.  (ECF No. 73 at 4–6.)  LGE argues that without this Court's modification of the applicable Patent Local Rules, it will be prejudiced in its defense of the case.  (ECF No. 73 at 3.)  LGE claims that AGNC will gain unfair advantage from its choice to assert seven patents because the scope of certain disputed claim terms will be left to the jury to resolve.  (*Id.*)  In opposition, AGNC argues that there is nothing extraordinary about this case that merits what it claims will be a "dramatic increase" in the resources that will be required to address the additional terms LGE seeks to have construed.  (ECF No. 76 at 1.)  The Court first finds that LGE's request to increase the ten term limit by two additional terms is warranted.  The Court, however, denies the request to also construe the terms LGE claims are similar for the purposes of the claim construction hearing.

First, LGE seeks construction of two additional terms at the claim construction hearing, which it asserts will be claim dispositive: "dither drive signal" ('555 patent) and "vehicle" ('555 patent).  In support of its argument that this Court should construe these terms as well, LGE points to the Federal Circuit's pronouncement that "[w]hen the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve that dispute."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1360.  As another judge in this District has observed, "it is the court's duty to resolve" such disputes.  *Imageware Sys., Inc. v. M2Sys. Tech*., LLC, No. 13-cv-846-JMA, ECF No. 48 at 4–5 (S.D. Cal. July 24, 2014).  AGNC's argument against construing additional terms rests not on consideration of these two additional terms, but rather on the burden it claims will result if the all the terms LGE seeks to have construed are construed at the claim construction hearing, including the indefinite terms LGE seeks to address separately.  (ECF No. 76 at 2.)  The Court is

persuaded that it is appropriate to increase the ten term limit identified in Rule 4.2(a) to construe the two additional terms LGE has identified as part of the claim construction hearing procedure.

This Court has discretion to modify the requirements set forth in the Patent Local Rules. Patent Local Rule 1.3 specifically provides that "the court may . . . modify the obligations . . . set forth in these Patent Local Rules based on the court's schedule or the circumstances of any particular case, including, *without limitation*, the complexity of the case or the number of patents, claims, products, or parties involved." S.D. CAL. PATENT L.R. 1.3 (emphasis added). The Rule provides the Court with substantial discretion in faithfully discharging its duties in a patent litigation. Although AGNC argues that there is nothing extraordinary about this case that warrants increasing the terms to be construed at the claim construction hearing, this case involves the assertion of sixteen claims across seven patents. (ECF No. 73 at 3.) A rigid application of Patent Local Rule 4.2(a) would prevent construction of even just one term from each claim. Neither party has identified any terms from the '555 patent in its five most significant terms within the total ten most significant terms permitted by Patent Local Rule 4.2(a).[4] (*See generally* ECF No. 72.) Although the Court is mindful of AGNC's argument about the potential burdens that may befall it and the Court, the Court does not find that the addition of these two terms to the claim construction hearing procedure will result in the burdensome picture AGNC has painted in its motion. In light of the Court's decision to increase the terms to be

---

[4] LGE indicates that Plaintiff contends that the term "dither driver signals" in the '122 patent, which Plaintiff has identified in the Joint Statement as Term 1 (ECF No. 72 at 4), should be construed separately from "dither drive signal" in the '555 patent, which LGE has identified as an additional "most significant" term over the ten term limit. (ECF No. 73 at 4 n.2.) Defendants represent that Plaintiff's reasoning is that the patents have different disclosures relating to these terms. (*Id.*) Given the nearly identical phrasing of the terms, the Court finds that LGE's request to increase the terms to construe above the ten term limit is especially warranted as to this additional term.

– 19 –

construed at the hearing to twelve terms total, the Court will grant Defendants'
request to increase the length of the opening claim construction briefs by five pages
and to permit two additional pages for the reply briefs.  (ECF No. 73 at 6.)

Second, LGE argues that this Court should construe "similar" most significant
claim terms in "similar" technology without those terms being counted separately
against the ten term limit.  (*Id.* at 1.)  In the alternative, LGE requests that the Court
treat them as additional terms that should be construed above the ten term limit.  (*Id.*)
LGE identifies the following terms as "similar" to terms it has identified as "most
significant" in the Joint Statement:

| Additional "Most Significant" Terms | "Similar" To: |
|---|---|
| 1. "digital angular increments" ('283, '648, '758) | Term No. 9: "digital velocity increments" ('283, '648, '758) |
| 2. "converting [said X axis, Y axis, and Z axis angular rate electrical signals] into [three axis digital angular increments] and converting [said X axis, Y axis and Z axis acceleration electrical signals] into [three-axis digital velocity increments] ('283) | Term No. 10: "converting [said three-axis angular rate signals] into [digital angular increments] and converting said [three-axis acceleration signals] into [digital velocity increments] ('758) |
| 3. "[said X axis, Y axis and Z axis angular rate electrical signals and said X axis, Y axis and Z axis acceleration electrical signals] are converted into [digital angular increments and digital velocity increments respectively]" ('648) | Term No. 10: "converting [said three-axis angular rate signals] into [digital angular increments] and converting said [three-axis acceleration signals] into [digital velocity increments] ('758) |

In opposition, AGNC asserts that the terms LGE claims are similar are in fact
different claim terms from different claims.  (ECF No. 76 at 4.)  Having considered
the parties arguments, the Court believes it is not appropriate to grant LGE's request

as to the terms it contends are similar for two reasons.  First, the Court is reticent to wade into this dispute which, in effect, calls on the Court to construe the meaning of facially non-identical terms as similar or dissimilar prior to the claim construction hearing.[5]  Terms 9 and 10 will be construed as a result of the claim construction hearing.  To the extent Defendants still believe that the additional terms it has identified are similar *after* they have the benefit of the Court's construction of Terms 9 and 10, Defendants will have the opportunity to have these terms construed before trial.  *See, e.g., Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013) ("failure to include a term at th[e] [claim construction] stage cannot reasonably constitute a waiver" in light of the ten term limit).  This opportunity addresses Defendants' concern that this Court and not a jury should resolve disputes about the meaning of certain terms.  Second, even assuming at this time that the terms are similar, the Court construes LGE's selection of Terms 9 and 10 pursuant to Patent Local Rule 4.2(a) as reflecting LGE's determination that construction of those terms will substantially aid in its defense pertaining to the terms it claims are similar.  Accepting LGE's position that terms are similar, construction of Terms 9 and 10 would be not only "most significant" to the resolution of claims in which the terms appear, but also to resolution of the claims which LGE contends use the "similar" terms.  Accordingly, the Court denies Defendants' motion as to the terms it claims are similar to terms which appear in the Joint Statement in order to focus the claim construction hearing on those terms which the parties have selected as the most

---

[5] The Court notes, however, that LGE's reliance on *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), in support of its argument appears to be misplaced.  In that case, certain terms used in multiple sibling patents.  *Id.* at 1293. ("Because NTP's patents all derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.").  Here, the terms LGE claims are similar to Terms 9 and 10 are not, on their face, identical to Terms 9 and 10.

significant to the resolution of this case.[6]

**B.    Request to Address Indefiniteness Challenges In Separate Briefing**

The Court next considers LGE's request to raise its indefiniteness challenges in separate briefing, rather than the claim construction hearing briefing. LGE asserts that while it does not view indefiniteness challenges as part of claim construction, it has sought to apprise the Court of its indefiniteness challenges to seven terms, which it believes will be case dispositive for certain patents. (ECF No. 73 at 6.) LGE argues that addressing its indefiniteness challenges through separate briefing is appropriate given the number of terms in dispute and the limited time allotted for a claim construction hearing. (*Id.* at 7.) Although AGNC acknowledges this Court's inherent power to manage its docket, it contends that indefiniteness challenges are a part of claim construction and that LGE has offered "no reason" to treat its indefiniteness arguments separately from claim construction. (ECF No. 76 at 5.) AGNC contends that granting LGE's request will give LGE multiple rounds of briefing and argument on claim construction issues. (*Id.*) This Court will exercise its inherent power to manage its docket to address LGE's indefiniteness challenges through separate briefing.

A patent's specification is statutorily required to "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. §112, ¶2. This requirement is the definiteness requirement, the purpose of which "is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d

---

[6] The Court additionally advises the parties that disputes, such as the dispute that led to LGE's *ex parte* motion, are appropriately addressed through a written motion to the Court, not through a telephonic request. The Court will not entertain telephonic requests, such as the one the parties made in connection with the current dispute. (ECF No. 73 at 2.)

– 22 –

1342, 1347 (Fed. Cir. 2005). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S. Ct. 2120, 2124 (2014). As Plaintiff correctly observes, "indefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc*., 700 F.3d 509, 517 (Fed. Cir. 2012).

Although indefiniteness is a question of law, indefiniteness challenges need not be raised solely at a claim construction hearing, but rather may be addressed at a later stage of the proceedings. LGE points to several authorities, including in this District, in which courts have deferred consideration of indefiniteness challenges to the summary judgment stage, apart from the claim construction hearing. (ECF No. 73 at 7.) The Court finds persuasive the reasoning set forth in *Industrial Technology Research Time Institute v. LG Electronics Inc*., No. 13-cv-2016-GPC-WVG, ECF No. 65 (S.D. Cal. Dec. 8, 2014). As that court concluded, a court has "discretion as to when to determine indefiniteness during patent proceedings," particularly in light of "the requirement that clear and convincing evidence be shown to invalidate a patent." *Id*. at 5 (quoting *Datamize, LLC*, 417 F.3d at 1348). This demanding evidentiary requirement counsels that consideration of indefiniteness challenges would be best addressed separately from the claim construction hearing. *See Kowalski v. Ocean Duke Corp*., No. 04-00055 BMK, 2007 WL 4104259, at *3 (D. Haw. Nov. 19, 2007) ("Indefiniteness must be demonstrated by clear and convincing evidence . . . and is not appropriate during claims construction."). As LGE correctly observes, the limited duration of a claim construction hearing coupled with an existing dispute about the meaning of certain terms constricts the ability of the parties and the court to meaningfully address indefiniteness challenges during the claim construction hearing. *Id*. at *6. Because the same limitations are present in this case, the Court believes it is appropriate to defer consideration of LGE's

– 23 –

1    indefiniteness challenges.

2         Accordingly, the Court grants LGE's request to raise its indefiniteness

3    challenges at a later stage of the proceedings.  The Court will permit LGE to raise

4    its challenges during the motion for summary judgment stage, particularly in light

5    of its contention that its challenges will be case dispositive for four of the seven

6    patents it allegedly infringed.  (ECF No. 73 at 7.)  The Court, however, advises both

7    parties that only one set of summary judgments will be entertained.  Because the

8    current Case Management Order does not address the timing of the summary

9    judgment motions, the parties will be permitted to file a joint scheduling statement

10   at an appropriate time.  They may contact the Magistrate Judge within fourteen days

11   from the issuance of this Court's order on the claim construction hearing.

12   **IV.    CONCLUSION & ORDER**

13        For the foregoing reasons, the Court **ORDERS** as follows:

14        1.    The Court **GRANTS** Plaintiff's motion for leave to file a surreply in

15   opposition to Defendants' motion for leave to file a first amended answer.  (ECF No.

16   50.)

17        2.    The Court **GRANTS** Defendants' request to file an amended answer in

18   the form of the Eighth and Ninth Defenses related to AGNC's alleged failure to

19   disclose the Ebner/McDonough combination and the prior rejection of identical

20   claims in connection with AGNC's prosecution of the '353 patent.  (ECF No. 46.)

21   The Court **DENIES** Defendants' request with respect to the proposed allegations

22   concerning the Millington/Tabbara references.  Defendants shall file their First

23   Amended Answer, consistent with this Order, **no later than January 26, 2018**.

24        3.    The Court **GRANTS** Defendants' request to increase the ten term limit

25   identified in Patent Local Rule 4.2(a) to include the terms "dither drive signal" ('555

26   patent) and "vehicle" ('555 patent) as part of the claim construction hearing.  (ECF

27   No. 73.)  The Court **DENIES** Defendants' request as to the other terms identified in

28   the motion.

4.     The Court **GRANTS** LGE's request to address indefiniteness at a later stage of the proceedings.  (ECF No. 73.)  LGE may raise its challenge at the motion for summary judgment stage.  The Court advises once more that only one set of summary judgment motions will be entertained.  The parties may confer with the Magistrate Judge regarding the summary judgment scheduling within 14 days of this Court's order on the claim construction hearing.

5.     The Court **HEREBY AMENDS** the Case Management Order (ECF No. 33) to set the Claim Construction Hearing for March 15, 2018, rather than February 26, 2018.  **The parties shall appear for the Claim Construction Hearing on March 15, 2018 in Courtroom 4B at 9:30 a.m**.  Having considered the parties' positions regarding the anticipated length of time for the hearing, the Court will permit each side **no more than 2 hours at the hearing for a total of 4 hours**, absent a request for additional time supported by good cause.

6.     The parties' opening claim construction briefs shall be no longer than thirty (30) pages in length.  Reply briefs shall be no longer than twelve (12) pages in length.

**IT IS SO ORDERED.**

**DATED:  January 12, 2018**

Hon. Cynthia Bashant
United States District Judge

17cv1090